Michael S. Devereux (SBN 225240)
9440 Santa Monica Blvd, Suite 301
Beverly Hills, California 90210
Telephone: (424) 600-8584
Email: mike@wex.law

Attorneys for Plaintiff, REGINA BEARDSLEY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA BEARDSLEY,<br><br>PLAINTIFF,<br>v.<br><br>COUNTY OF SAN BERNARDINO; SAN BERNARDINO SHERIFF'S DEPARTMENT; DETECTIVE A. ALFARO; DEPUTY C. BRANDT; and DOES 1-10;<br><br>DEFENDANTS. | CASE NO.: 5:25-cv-03063-RGK-AS<br><br>Supplemental Declaration of Plaintiff's Expert Witness in Support of Plaintiff's Memorandum of Points and Authorities in Support of Motion to Alter or Amend the Judgment [Fed. R. Civ. P. 59(e)]<br><br>Hon. R. Gary Klausner |



MICHAEL DEVEREUX, ESQ.

# SUPPLEMENTAL DECLARATION OF ROBERT P. WOOLVERTON

*Regina Agnes Beardsley v. County of San Bernardino, et al.*

U.S. District Court, Central District of California | Case No. 5:25-cv-03063-RGK-AS

I, Robert P. Woolverton, declare as follows:

**Introduction and Incorporation**

1. I am the retained police-practices expert for Plaintiff Regina Agnes Beardsley in this action. I make this supplemental declaration in support of Plaintiff's Motion to Alter or Amend the Judgment under Federal Rule of Civil Procedure 59(e). I have personal knowledge of the facts stated herein and of my own review of the materials described below, and if called as a witness I could and would testify competently to them.

2. I previously executed a declaration in this matter on August 23, 2026, in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. My qualifications, my methodology, and my curriculum vitae are set out in that declaration and its Exhibit A, and I incorporate them here by reference. This declaration formalizes findings I first reported to Plaintiff's counsel on August 22, 2026, and states additional findings from materials that first became available to me after the Court's September 18, 2026, Order.

**The Raid at Issue**

3. The law-enforcement operation at issue in this case is the search-warrant service (the "raid") at 15570 Smoke Tree Street, Hesperia, California. Defendants' own records establish that the raid occurred on May 17, 2024: the Department's computer-aided dispatch (CAD) event for the operation, GD241380050, was created at 12:49:52 p.m. on May 17, 2024 (SBC 000117).

**The Single Search-Warrant Clip Produced to Plaintiff Is Not the Raid**

4. Among the materials provided for my review from Defendants' production was a single search-warrant body-worn camera clip, labeled "Search Warrant, Deputies Approach Suspect Residence, Pt. 1," Bates number SBC 000189. In my professional opinion, that clip does not depict the May 17, 2024, raid. It records a different law-enforcement operation, on a different date, at a different location, by a deputy who was not part of the raid. The bases for that opinion are objective and specific:

**a. Date and time.** The clip's on-screen Axon timestamp overlay begins at 11:21:19 a.m. on May 20, 2024, three days after the raid. The file's embedded creation stamp, written by the recording system and independent of any file name, reads May 20, 2024, at 11:21:49 a.m.

**b. The thirty-second difference between those two times is expected.** The Axon Body 3 camera continuously holds a rolling thirty-second pre-event buffer of video, without audio. When the officer activates the camera, the system stamps the file's creation and prepends the buffered thirty seconds. Consistent with that design, the clip's first thirty seconds are silent video beginning at 11:21:19, and the audio begins at 11:21:49, the same moment as the embedded creation stamp. The two times corroborate rather than contradict one another.

**c. Recording deputy.** The on-screen overlay identifies Axon Body 3 serial number X60AD2519. The recording deputy is identified in the footage as Deputy T. Romero. Deputy Romero does not appear on the operational plan roster or the CAD roster for the May 17, 2024, raid (SBC 000096 to 000104, 000117 to 000119).

**d. What the clip depicts.** The clip shows a measured knock-and-announce contact: deputies knock, a middle-aged woman answers the door and is directed to a deputy outside, and the entry team then methodically clears the house with weapons drawn in the up-and-ready position. The clip contains no public-address announcements, no armored vehicle, and no deployment of munitions. None of that matches Defendants' own reports of the May 17 raid, which describe loudspeaker announcements from an armored rescue vehicle and the firing of two 40mm impact rounds through a front window (SBC 000170, 000174).

**e. Location.** A Victorville Police Department unit appears on scene. The raid at issue occurred in Hesperia. I also compared the residence depicted in the clip with 15570 Smoke Tree Street using publicly available street-level imagery; the residence in the clip is not 15570 Smoke Tree Street.

5. The only other body-worn camera file Bates-numbered in the production reviewed before the Court's Order was SBC 000192, a June 24, 2024, recording of a custodial interview of inmate Liam Thompson. It is not the raid. Accordingly, as I reported to Plaintiff's counsel on August 22, 2026, and stated in my August 23, 2026, declaration, no body-worn camera footage of the May 17, 2024, raid was among the materials produced for my review.

**Materials First Available After the Judgment Confirm and Extend That Finding**

6. On September 18, 2026, Defendants served a supplemental expert disclosure. Its exhibit index assigns Bates numbers SBC 000185 through 000191 to the seven "BWC video, Search Warrant" entries that the original July 22, 2026, disclosure had listed without Bates numbers, and identifies every one of them as recorded on May 20, 2024, at 13715 Hidden Valley Road in Victorville, a different warrant service at a different address three days after the raid.

7. Also on September 18, 2026, the video files themselves were provided for my review through Plaintiff's counsel, together with an eighth file, SBC 000184. I have now reviewed all eight files, along with re-examining SBC 000189 and 000192. My verification method had three independent layers: (a) I viewed the content of each file; (b) I read the date, time, camera serial number, and time zone from the Axon overlay burned into the video frames of each recording; and (c) I personally examined each file's embedded creation date and time, the metadata written by the recording system, in the file properties, and full-precision timestamps were extracted from the same embedded metadata using standard media-analysis software, consistent with what I observed. A table of the embedded metadata of every media file in Defendants' production is attached as Exhibit 1. That review established that none of these recordings depicts the May 17, 2024, raid at Mrs. Beardsley's home; the specifics follow.

8. All three layers agree, and they agree with Defendants' own supplemental index. The seven videos SBC 000185 through 000191 were all created on May 20, 2024, between 10:08 a.m. and 11:31 a.m. Pacific time. Their creation stamps cluster in two groups consistent with a single operation: three cameras activating within eleven seconds of one another at 10:08 a.m. (SBC 000185, 000186, 000187), and four cameras activating between 11:21 a.m. and 11:31 a.m. (SBC 000188 through 000191). Three of the seven (SBC 000185 to 000187) depict the search of a self-storage facility, not the approach to any residence. The remaining four (SBC 000188 to 000191) depict the Victorville residence contact described above. SBC 000184 is a detective's May 15, 2024, visit to an Extra Space Storage facility. None of the eight files contains any footage of Mrs. Beardsley, of 15570 Smoke Tree Street, or of any event of May 17, 2024.

9. The conclusion is no longer an inference; it is confirmed by Defendants' own expert's index and by my direct review of every designated file: no body-worn camera recording of the May 17, 2024, raid exists anywhere in Defendants' production or among their expert's designated exhibits.

**The Prior Declaration and the Present Record**

10. My August 23, 2026, declaration (ECF No. 58-4) stated, at paragraphs 7 through 9, my finding that the single search-warrant clip produced, SBC 000189, does not depict the raid at issue but a different law-enforcement contact recorded three days later, and, at paragraph 10, that the index accompanying the defense expert's disclosure listed seven search-warrant body-worn camera videos that carried no Bates numbers and had not been produced. The present declaration confirms both statements from materials that did not exist, or were not available to me, before the judgment: Defendants' own September 18, 2026, supplemental index now identifies all seven videos as recordings of a May 20, 2024, warrant service in Victorville; none is a recording of the May 17, 2024, raid at Mrs. Beardsley's home in Hesperia. My direct review of the files themselves, described above, verifies both points.

11. The Court's September 18, 2026, Order observed that, as Plaintiff noted and Defendants did not materially dispute, notable evidence is missing from the record, if it exists at all, including the body-worn camera footage and any contemporaneous audio recording of the Warrant's execution. The facts stated in this declaration bear directly on that question: Department policy required every participating member to record the raid; the produced record contains no such recording; and the Department's own retention system, including access and deletion logs its policy requires to be retained permanently, can establish whether such recordings ever existed and what became of them.

**Department Policy Required the Raid to Be Recorded**

12. Department policy in force on the day of the raid commanded that it be recorded. Manual section 3.142.60, added August 31, 2023, provides that "[e]ach Department member[] shall activate their issued BWC when participating in pre-planned law enforcement actions," expressly including "[t]he service of search warrants" (SBC 000823 to 000824). Section 3.142.50 separately requires activation when an event has a reasonable likelihood of resulting in an administrative or civil complaint (SBC 000822). The May 17 raid was a pre-planned search-warrant service. Multiple Department members participated. Under the Department's own policy, each of them was required to record it.

13. That personnel in this same investigation used their cameras at warrant services is demonstrated by Defendants' own production: the seven videos of the May 20, 2024, Victorville service described above, and the supplemental report of Detective S. McMillan, which states of three related warrant services on May 21, 2024, "I recorded the service of all three search

warrants on my body worn camera. The recordings were later uploaded onto evidence.com" (SBC 000042).

14. Two possibilities follow, and only two. Either no member of the operation recorded the May 17, 2024, raid, a department-wide departure from section 3.142.60; or the raid was recorded and the footage has not been produced or has not been retained. In either case, the objective record that Department policy required to exist for precisely this kind of event is absent from the production.

**Retention, the Risk of Destruction, and the Records That Would Resolve the Question**

15. The Department's own retention policy frames the risk. Manual section 3.142.25, added August 31, 2023, provides that a body-worn camera recording "will initially be unlabeled and uncategorized and subject to being automatically deleted after one year by the system unless the recording is labeled for retention" (SBC 000819 to 000821). Labeling is not optional for an event like this one: recordings related to a felony, a use of force, an adverse citizen contact, or an informal or formal citizen complaint "shall be retained, categorized, and labeled by the recording member with the associated criminal report or incident number." The May 17 raid qualifies under each of those categories. A labeled recording follows the retention schedule of Manual section 4.430, under which felony-case media is retained seven years (SBC 001209 to 001210).

16. The same policies restrict deletion. Section 3.142.30 provides that "[a] member cannot unilaterally delete a BWC recording"; deletion requires supervisor review and action by the BWC System Administrator, the Commander of the Professional Standards Division (SBC 000821). The Department's recordings policy further provides that any recording of a use-of-force incident or adverse contact with the public "shall be retained and kept as evidence in preparation for possible civil litigation," shall be maintained a minimum of one year per Government Code section 34090.6, and shall not be erased without the approval of the Civil Liabilities Division commander, the Internal Affairs Division commander, or the District Attorney's Office (sections 2.454.25 through 2.454.40, SBC 000697 to 000698). These provisions are consistent with the statewide framework of Penal Code section 832.18, under which nonevidentiary body-camera data should be retained a minimum of 60 days and evidentiary data, including recordings of a use of force, of an incident leading to a detention, or relevant to a formal or informal complaint, should be retained a minimum of two years.

17. Applying those provisions to this case: if any May 17, 2024, raid footage was recorded and labeled as the Department's policy commanded, it is on a seven-year retention schedule and exists today. If raid footage was recorded but left unlabeled, the system would have automatically deleted it on or about May 17, 2025. By that date the Department had been on notice of the incident and of Mrs. Beardsley's complaint for a full year: her 911 call reporting shooting into her home was logged into the Department's own CAD event in real time on May 17, 2024 (SBC 000118, 000179), and Plaintiff's government tort claim was filed on May 14, 2025, three days before any such automatic deletion date. In my professional opinion, the Department's own policies, the statewide framework, and generally accepted law-enforcement records practice all required any raid footage to be identified, labeled, and preserved long before that deletion date. If any May 17 footage was instead left unlabeled, the system itself would have destroyed it on that schedule. Either outcome is now fixed: labeled footage exists today, and unlabeled footage was destroyed at a time when the Department had been on notice of this claim for a full year.

18. Finally, the question of what happened to any May 17 footage is answerable from records the Department's own policy says still exist. Section 3.142.25 provides: "Records of logs of access and deletion of BWC recordings shall be retained permanently" (SBC 000820). Penal Code section 832.18 states the same best practice. Those audit logs would show whether May 17, 2024, recordings were ever uploaded, who accessed them, whether and when any were deleted, and by whom. No such logs have been produced. In my professional opinion, the direct way to resolve whether raid footage existed, and what became of it, is production of the body-worn camera system's audit logs for May 17, 2024, together with the upload and category records for every member of the operation. Retrieving those records is a routine function of the system, not a burdensome undertaking.

**Reservation**

19. My review of Defendants' production is ongoing. I reserve the right to supplement this declaration upon production of the materials identified above, including the audit logs, any May 17, 2024, recordings, and the SED Command Vault audio and photographs referenced in Defendants' own reports (SBC 000174).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 24, 2026, at Bothell, Washington.

/s/ Robert P. Woolverton

Robert P. Woolverton

# EXHIBIT 1

Embedded Creation Metadata of the Media Files in Defendants' Production (SBC 000179 to 000194)

| **Bates No.** | **Produced file description** | **Duration** | **Embedded creation (UTC)** | **Embedded creation (Pacific)** |
|---|---|---|---|---|
| SBC 000179 | 911 call, Plaintiff (audio) | 2:10 | (audio file) | (audio file) |
| SBC 000180 | 911 call, Brenda Beardsley (audio) | 1:15 | (audio file) | (audio file) |
| SBC 000181 | Dispatch radio (audio) | 3:10:07 | (audio file) | (audio file) |
| SBC 000182 | 911 call, storage burglary (audio) | 6:00 | (audio file) | (audio file) |
| SBC 000183 | Interview of Joshua Perry (audio) | 2:11:40 | (audio file) | (audio file) |
| SBC 000184 | BWC, detective at Extra Space Storage | 34:54 | 2024-05-15 21:47:21 | May 15, 2024, 2:47:21 p.m. |
| SBC 000185 | BWC, Search Warrant Pt. 1, 13715 Hidden Valley Rd. | 36:06 | 2024-05-20 17:08:37 | May 20, 2024, 10:08:37 a.m. |
| SBC 000186 | BWC, Search Warrant Pt. 2, 13715 Hidden Valley Rd. | 35:56 | 2024-05-20 17:08:40 | May 20, 2024, 10:08:40 a.m. |
| SBC 000187 | BWC, Search Warrant Pt. 3, 13715 Hidden Valley Rd. | 35:11 | 2024-05-20 17:08:29 | May 20, 2024, 10:08:29 a.m. |
| SBC 000188 | BWC, Deputies Approach Suspect Residence (Loup) | 51:38 | 2024-05-20 18:22:49 | May 20, 2024, 11:22:49 a.m. |
| SBC 000189 | BWC, Deputies Approach Suspect Residence Pt. 1 | 7:05 | 2024-05-20 18:21:49 | May 20, 2024, 11:21:49 a.m. |
| SBC 000190 | BWC, Deputies Approach Suspect Residence Pt. 2 | 39:41 | 2024-05-20 18:31:08 | May 20, 2024, 11:31:08 a.m. |
| SBC 000191 | BWC, Deputies Approach Suspect Residence, Full | 1:20:22 | 2024-05-20 18:23:24 | May 20, 2024, 11:23:24 a.m. |
| SBC 000192 | BWC, interview of inmate Liam Thompson | 22:30 | 2024-06-24 18:33:42 | June 24, 2024, 11:33:42 a.m. |
| SBC 000193 | Surveillance, storage facility (iPhone 13 video) | 4:14 | 2024-04-25 21:50:23 | April 25, 2024, 2:50:23 p.m. |

| | | | | |
|---|---|---|---|---|
| SBC 000194 | Surveillance, vehicle plates (iPhone 13 video) | 0:18 | 2024-04-25 21:35:56 | April 25, 2024, 2:35:56 p.m. |

Note: embedded creation stamps were read from each video file's container metadata, which is written by the recording system in Coordinated Universal Time (UTC); Pacific times reflect UTC minus seven hours (Pacific Daylight Time). Durations are the files' actual playback lengths. No video file in the production carries a May 17, 2024, creation date.